**Judge Hellerstein**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

AMCOM SOFTWARE, INC.,

                Plaintiff,

– v. –

SDC SOLUTIONS, INC. and
JOSEPH P. KOSAKOWSKI,

                Defendants.

-------------------------------------------------------------- X

Civil Action No. 08 CIV 5059

**COMPLAINT**

RECEIVED JUN 03 2008 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Amcom Software, Inc. ("Amcom" or "Plaintiff"), by and through its attorneys, Dorsey & Whitney LLP, hereby alleges as follows:

**PARTIES**

1. Amcom is a corporation organized under the laws of Delaware with its principal place of business in Minneapolis, Minnesota and offices in, among other places, New York, New York. Amcom provides software and services to businesses and agencies with call centers and emergency management needs in order to support both day-to-day business operations and emergency-event-driven communications, coordination, and responses. Amcom's technological products and services are used by more than 400 companies and agencies in the fields of healthcare, education, finance, utilities, and government.

2. SDC Solutions, Inc. ("SDC") is a corporation organized under the laws of New Hampshire with its principal place of business in Manchester, New Hampshire. SDC is a competitor of Amcom in that it also seeks to provide technological solutions and support to businesses and agencies with call centers and emergency management needs. It regularly conducts business in New York.

3. Joseph P. Kosakowski ("Kosakowski") is, on information and belief, a citizen of the State of New Jersey. Kosakowski was formerly Vice President of Special Projects, and then Chairman of the Executive Committee (concerned with the management and operation of the sales force), at XTEND Communications Corp. ("XTEND"), a New York corporation engaged in the business of providing telecommunications solutions and software to customers across the country. Kosakowski's employment was terminated when Amcom acquired XTEND in November 2007. On information and belief, SDC employed Kosakowski very shortly after that termination, and Kosakowski currently holds the title of Director of Sales, New Business at SDC.

## JURISDICTION AND VENUE

4. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this District and Amcom has been injured in this District.

## FACTS

### General Allegations

6. This lawsuit arises from Kosakowski's theft of Amcom's trade secrets and confidential and proprietary information, and his subsequent disclosure and use of that information, in clear violation of a non-disclosure agreement, as well as federal and state law.

7.  In or about December 2007, SDC, a direct competitor to Amcom, hired Kosakowski to be its Director of Sales, New Business. Using the trade secrets and proprietary and confidential information that Kosakowski had obtained from XTEND (his former employer and now a division of Amcom), SDC and Kosakowski have attempted, and are still attempting, to divert Amcom's customers to SDC. In the course of doing so, Kosakowski has violated a non-disclosure agreement which prohibits Kosakowski from utilizing or disclosing Amcom's proprietary and confidential information, and Kosakowski and SDC have violated federal and state laws which prohibit their conduct.

8.  The character and nature of Kosakowski's and SDC's ongoing efforts to solicit Amcom's clients threaten Amcom with irreparable harm that cannot be adequately compensated by monetary damages. These solicitation efforts have already cost Amcom some of its goodwill with its customers, and threaten Amcom with a further substantial loss of goodwill and profits.

### Kosakowski's Access to the Protected Information

9.  In June 2004, Kosakowski was offered the opportunity to become Vice President of Special Projects at XTEND at its New York headquarters, located at 171 Madison Avenue, New York, New York.

10. At the start of his employment in this executive-level position, Kosakowski was provided with an Employee Handbook governing the terms and conditions of his employment. Both XTEND and Kosakowski understood that as part and parcel of becoming a Vice President at XTEND, Kosakowski would be privy to a variety of confidential and proprietary information, including (but not limited to) sensitive trade secrets that were vital to the interests and success of XTEND. Accordingly, Section 1.8 of the Employee Handbook included a Non-Disclosure

Agreement in that required employees to protect XTEND's trade secrets and confidential information as a condition of their employment.

11. Pursuant to Section 1.8 of the Employee Handbook, which Kosakowski executed, Kosakowski agreed that he would not "improperly use or disclose trade secrets or confidential business information." The trade secrets and confidential information Kosakowski agreed to protect included, among other things, customer lists, customer preferences, financial information, compensation data, marketing strategies, and pending projects and proposals.

12. As set forth above, Kosakowski was employed at the New York office of XTEND. The terms of his employment were negotiated in New York, and he executed his Non-Disclosure Agreement in New York.

13. In the course of managing and reorganizing the sales force at XTEND, Kosakowski implemented a new customer relationship management software database tool, called "Goldmine," to manage customer data. All of XTEND's sensitive confidential proprietary customer information – including its customer list (comprising existing and prospective customers throughout the world), specific contact information for each customer (including, among other things, certain customer contacts' private mobile phone numbers and pager information), customer purchasing history, customer preferences and interests, and customer notes – was entered into the Goldmine database.

14. As Vice President of Special Projects, and then as Chairman of the Executive Committee, Kosakowski had personal contact with only some of XTEND's customers. In addition, Kosakowski did not come up through XTEND's sales ranks over the course of several years. Rather, he was hired at a managerial level, and during the course of his employment, did not develop, through day-to-day sales contact, a thorough familiarity with XTEND's customer

base. In any event, Kosakowski could not have, through independent recollection, reconstructed the trade secrets and confidential information contained in the Goldmine database and in confidential electronic documents that he took from the company.

15.  The information contained in Goldmine took many years, and a substantial investment of time and resources, to acquire and develop. The contents of Goldmine not only reflect XTEND's business development over many years, but are integral to the maintenance of client relationships and further business generation. For example, XTEND's customer contacts at hospitals held a variety of positions and titles that would not be readily discernible to the general public and indeed even to most of the hospitals' own administrators. Direct inquiries to those hospitals would be unlikely to yield the names of those contacts, and certainly would not reveal the unique information acquired by XTEND through its relationships with those contacts (including, but not limited to their needs, interests, and preferences, as well as their personal, private contact information outside their offices). XTEND's and Amcom's competitors would derive a significant competitive advantage from obtaining and using such information.

16.  Accordingly, XTEND had procedures in place to protect the information entered into Goldmine. The database was password-protected, and access was limited to authorized sales and marketing personnel and technical system administrators. The ability to export data from the Goldmine system was limited to a handful of key employees. Pursuant to XTEND's computer policies, employees were prohibited from storing confidential customer information on network drives. Access to XTEND's offices was restricted such that an access card was required to enter the office. In addition to these access and use restrictions, XTEND required its employees to execute agreements such as that executed by Kosakowski that restricted the use of

the Company's confidential, proprietary and trade secret information and valuable computer data.

17.  Amcom continues to maintain these procedures, and aggressively responds to actual and threatened breaches of them.

### The Theft

18.  On November 15, 2007, Amcom and XTEND executed an Asset Purchase Agreement by which Amcom acquired all of XTEND's business, including its name, goodwill, real and personal property, all contracts to which XTEND was party, contractual rights and obligations, trade secrets, confidential information, proprietary information, all written materials, data and records (in whatever form or medium), including client, customer, prospect, supplier, dealer, and distributor lists and records, and legal rights and claims, among other assets. The transaction closed on November 19, 2007.

19.  Amcom determined that it would not hire Kosakowski, then the Chairman of the Executive Committee of XTEND.

20.  On or about November 21, 2007, Kosakowski was notified of his termination, his severance offer, and obligations upon termination.

21.  The next day, Kosakowski visited the New York offices of the XTEND Division of Amcom to finalize his departure from the company. That same day, Kosakowski expressed resentment concerning his termination to Lou Kurpis (formerly the CFO of XTEND, and now the General Manager of the XTEND Division of Amcom) and, in expressing his dissatisfaction with the company's severance offer to him, heralded his ability to cause "damage in the marketplace" to the company.

22. Section 7.6 of the Employee Handbook provides that employees must return all XTEND property immediately upon termination. Although Kosakowski relinquished his other XTEND materials on that final visit to the office, including his office access card and corporate credit card, Kosakowski left with the laptop he had used during his employment at XTEND, without prior authorization to do so and in violation of Section 7.6 of the Employee Handbook.

23. The laptop had an internet connection, was usually connected to the internet, and was used by Kosakowski for interstate commerce and communications, including communications with sales representatives and alliance partners located in other states. On information and belief, Kosakowski took the laptop from New York to New Jersey with the purpose and intent of obtaining Amcom's confidential and proprietary information that was contained on the laptop, and ultimately communicating and using that information across state lines.

24. The laptop contained a substantial amount and variety of confidential and trade-secret-protected information. In addition to the Goldmine database (which contained XTEND's customer list, specific contact information for each customer, customer purchasing history, and customer preferences), the laptop also contained, on information and belief, confidential, proprietary, and trade-secret-protected data that includes historical financial information, compensation data, marketing strategies and sales presentations, and pricing and proposals.

### The Disclosure and Misuse of Amcom's Trade Secrets

25. Shortly after Kosakowski's termination, SDC – a direct competitor of XTEND and Amcom – hired Kosakowski as its Director of Sales, New Business.

26. On information and belief, Kosakowski and SDC are using confidential proprietary and trade-secret-protected information that belongs to Amcom and was contained on Kosakowski's laptop to actively solicit Amcom's customers and divert business from it to SDC.

27. For example, on information and belief, in or about February 2008, Kosakowski contacted all of XTEND's (now Amcom's) customers with a letter that raised concerns regarding Amcom's acquisition of XTEND, and that promoted SDC as an alternative and superior supplier of technological solutions for Amcom's customers. At least three customers, including one located in New York, have provided Amcom with copies of the letters that they received from Kosakowski. Numerous Amcom customers have complained about the solicitations.

28. On information and belief, Kosakowski could have effectuated such a mass mail solicitation only through the misappropriation of Amcom's confidential and proprietary and trade-secret-protected compilation of existing and prospective customer information, to which, as set forth above, XTEND dedicated substantial amounts of time, money and other resources to develop, and which was contained in the Goldmine database. Upon information and belief, the names of the customer contacts and their addresses contained in the mass mail solicitation mirror perfectly the information contained in Goldmine.

29. SDC and Kosakowski have further illegally and unfairly used – and continue to use – Amcom's trade secrets and confidential information to solicit business from Amcom's customers and to underbid Amcom. For example, one customer has reported with dismay that Kosakowski contacted her by use of a private pager number that was contained in the Goldmine database and intended for limited use by XTEND/Amcom.

30. Amcom has been damaged as a result of Kosakowski's and SDC's solicitations of Amcom's customers. Merely by way of example, Amcom has had to dedicate significant time

to, and incurred substantial costs in, traveling to meet with customers to mitigate the damage done to its goodwill and business relations; in some cases, Amcom has had to lower its fees to maintain those relationships and its goodwill. Furthermore, the value of Amcom's trade secrets and confidential information has diminished inasmuch as they are now being improperly used freely by a direct competitor.

31. Amcom and SDC have also submitted competing bid proposals to prospective customers contained in the Goldmine database. On information and belief, confidential and trade-secret protected information regarding these prospective customers, including contact information, customer interests, marketing presentations and strategy, and proposals with price quotes, has been used by Kosakowski and SDC in an attempt to underbid Amcom.

32. Amcom demanded the unconditional return of its confidential and proprietary information from Kosakowski and SDC, and that the Kosakowski and SDC refrain from use of it. To date, Amcom's proprietary information has not been returned and, upon information and belief, Kosakowski and SDC continue to use it.

## COUNT I

### Conversion
### (Against SDC and Kosakowski)

33. Amcom repeats and re-alleges the allegations of paragraphs 1 through 32 and incorporates them herein by reference.

34. From November 19, 2007, through the present, all right, title, and interests in Amcom's trade secret and/or confidential and proprietary information and documents – including the information contained in the Goldmine database and the other confidential and proprietary information contained on the laptop taken by Kosakowski – resided with Amcom.

35. SDC and Kosakowski have, wrongfully and without authorization, assumed and exercised dominion and control over the confidential data contained on the laptop taken by Kosakowski, which included Amcom's trade secrets and confidential and proprietary information, such that their use of that information is inconsistent with and in defiance of, and has seriously interfered with, Amcom's ownership and right to control such information. SDC and Kosakowski have thereby jointly and/or independently converted Amcom's confidential and proprietary information and documents by their misappropriation of Amcom's trade secrets and confidential business information, and by the fact that they have used and continue to use the trade secret protected customer and business information to unfairly compete with Amcom.

36. Defendants knowingly, dishonestly, and intentionally procured, retained, used, and attempted to market and otherwise capitalize on the value of Amcom's trade secrets and confidential and proprietary information and documents, without Amcom's authorization and without giving value to Amcom for such continued use.

37. Amcom has demanded that SDC and Kosakowski stop using Amcom's confidential and proprietary information and return any documents belonging to Amcom.

38. To date, SDC and Kosakowski have not complied with Amcom's demand to return and cease using Amcom's property.

39. Amcom continues to be irreparably harmed by the defendants' conversion of Amcom's confidential and proprietary information and documents.

40. By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial (but in excess of $75,000) and, because its remedy at law is inadequate, seeks preliminary and permanent injunctive relief to protect its confidential and proprietary

customer list and information, strategic business information (including pricing, marketing, and other business information), its client goodwill, and other legitimate business interests.

## COUNT II

### Unfair Competition
### (Against SDC and Kosakowski)

41. Amcom repeats and re-alleges the allegations of paragraphs 1 through 40 and incorporates them herein by reference.

42. The defendants SDC and Kosakowski have engaged in unfair competition with Amcom by their conversion of Amcom's confidential business information and by the fact that they have used and continue to use Amcom's confidential and proprietary information to unfairly compete with Amcom.

43. Additionally, upon information and belief, in soliciting Amcom's customers, Kosakowski has represented himself as the former Chief Operating Officer of XTEND. At no time did Kosakowski hold such position.

44. Amcom continues to be irreparably harmed by the defendants' use of Amcom's confidential and proprietary information and documents, and by the defendants' misrepresentations in doing so, to compete unfairly with Amcom.

45. By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial (but in excess of $75,000) and, because its remedy at law is inadequate, seeks preliminary and permanent injunctive relief to preclude SDC and Kosakowski from continuing to unfairly compete with Amcom.

## COUNT III

### Breach of Contract
### (Against Kosakowski)

46.     Amcom repeats and re-alleges the allegations of paragraphs 1 through 45 and incorporates them herein by reference.

47.     Upon, and as a condition of, his employment with XTEND, on or about June 7, 2004, Kosakowski executed a Non-Disclosure Agreement by which he agreed that he would not "improperly use or disclose trade secrets or confidential business information."

48.     The trade secrets and confidential information Kosakowski agreed to protect included, among other things, customer lists, customer preferences, financial information, compensation data, marketing strategies, and pending projects and proposals.

49.     Kosakowski owed a contractual duty of non-disclosure to XTEND. By virtue of Amcom's acquisition of XTEND, Kosakowski also owed those obligations of non-disclosure to Amcom.

50.     As evidenced by his solicitation of Amcom's customers, Kosakowski has improperly used and disclosed Amcom's trade secrets and confidential business information, including but not limited to Amcom's customer list, customer preferences, financial information, compensation data, marketing strategies, and pending projects and proposals, in breach of the Non-Disclosure Agreement.

51.     Amcom continues to be irreparably harmed by Kosakowski's breach of the Non-Disclosure Agreement.

52.     By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial (but in excess of $75,000) and, because its remedy at law is inadequate, seeks preliminary and permanent injunctive relief to protect its confidential and proprietary

customer list and information, strategic business information (including pricing, marketing, and other business information), its client goodwill, and other legitimate business interests.

## COUNT IV
### Tortious Interference with Contract
### (Against SDC)

53. Amcom repeats and re-alleges the allegations of paragraphs 1 through 52 and incorporates them herein by reference.

54. As alleged herein, Kosakowski breached his Non-Disclosure Agreement.

55. Defendant SDC was aware of Kosakowski's contractual non-disclosure obligations, but intentionally and unjustifiably interfered in the aforementioned contractual breaches by facilitating and inducing Kosakowski to disclose and improperly exploit Amcom's confidential and proprietary business information in connection with its efforts to entice away Amcom's customers.

56. Amcom continues to be irreparably harmed by the SDC's tortious interference with the Non-Disclosure Agreement.

57. By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial (but in excess of $75,000) and, because its remedy at law is inadequate, seeks injunctive relief to preclude SDC from continuing to induce Kosakowski to breach the Non-Disclosure Agreement.

## COUNT V

### Misappropriation of Trade Secrets
### (Against SDC and Kosakowski)

58. Amcom repeats and re-alleges the allegations contained in paragraphs 1 through 57 and incorporates them herein by reference.

59. As alleged herein, Amcom possesses confidential information that also constitutes

trade secrets.

60. Amcom has expended substantial resources in developing its trade secrets for its exclusive benefit, and those trade secrets provide Amcom with an advantage over its competitors. Amcom's trade secrets derive independent economic value from the fact that they are neither generally known, nor readily ascertainable by proper means, by Amcom's competitors.

61. XTEND did not, and Amcom does not, disclose its trade secrets to its competitors and have undertaken reasonable efforts to protect the confidentiality of those secrets, by means including, but not limited to, maintaining systematic procedures protecting them and having employees sign non-disclosure agreements.

62. SDC and Kosakowski knew or had reason to know that Amcom intended its proprietary data and trade secrets to remain confidential; however, SDC and Kosakowski have misappropriated, have wrongfully used, and continue to wrongfully use, Amcom's trade secrets to compete unfairly against Amcom.

63. Amcom continues to be irreparably harmed by the defendants' misappropriation of Amcom's trade secrets.

64. By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial (but in excess of $75,000) and, because its remedy at law is inadequate, seeks injunctive relief to protect its confidential and proprietary customer list and information, strategic business information (including pricing, marketing, and other business information), its client goodwill, and other legitimate business interests.

## COUNT VI

### Computer Fraud and Abuse Act
### (Against Kosakowski)

65. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 64 and incorporates them herein by reference.

66. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., permits any person who suffers damage or loss by reason of criminal activity prohibited by this federal criminal statute to bring a civil action for damages and injunctive relief.

67. From on or about November 21, 2007 through the present, Kosakowski, knowingly and with intent to defraud, accessed a protected computer without authorization and/or exceeded authorized access; and by means of such conduct furthered the intended fraud and obtained things of value, to wit, valuable, confidential, and proprietary customer and business information belonging to Amcom, in violation of federal criminal law, 18 U.S.C. § 1030(a)(4).

68. As a result of Kosakowski's violation of 18 U.S.C. § 1030(a)(4), Kosakowski has caused a loss to Amcom of at least $5,000 in value in the aggregate, including, but not limited to, the cost of the forensic investigation conducted in response to Kosakowski's offenses and the cost of conducting a damage assessment of Kosakowski's offenses.

69. By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial and, because its remedy at law is inadequate, seeks injunctive relief to protect its confidential and proprietary customer list and information, strategic business information (including pricing, marketing, and other business information), its client goodwill, and other legitimate business interests.

## COUNT VII

### Computer Fraud and Abuse Act
### (Against Kosakowski)

70.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 69 and incorporates them herein by reference.

71.     From on or about November 21, 2007 through the present, Kosakowski knowingly and intentionally accessed a protected computer without authorization, and as a result of such conduct, which involved interstate communications between New York, New Jersey, and New Hampshire, obtained information from the protected computer that includes client and supplier information and strategic business information, in violation of federal criminal law, 18 U.S.C. § 1030(a)(2)(C).

72.     As a result of the Kosakowski's violation of 18 U.S.C. § 1030(a)(2)(C), Kosakowski has caused a loss to Amcom of at least $5,000 in value in the aggregate, including, but not limited to, the cost of the forensic investigation conducted in response to the defendants' offenses and the cost of conducting a damage assessment of the defendants' offenses.

73.     By reason of the acts alleged herein, Amcom has been damaged in an amount to be determined at trial and, because its remedy at law is inadequate, seeks injunctive relief to protect its confidential and proprietary customer list and information, strategic business information (including pricing, marketing, and other business information), its client goodwill, and other legitimate business interests.

WHEREFORE, Plaintiff prays for a judgment providing the following relief:

a.      ordering Kosakowski and SDC to immediately return and/or destroy all copies and versions of Amcom's trade secrets and confidential/proprietary information, whether contained on Kosakowski's laptop or otherwise in the defendants'

-16-

      possession, and to certify to Amcom under penalty of perjury that they have returned and/or destroyed all copies and versions of such information;

b.    enjoining Kosakowski and SDC from directly or indirectly disclosing or using any and all of Amcom's trade secrets and confidential/proprietary information, including the information contained in the Goldmine database and that was misappropriated from Amcom's computers;

c.    an award of monetary damages suffered by Amcom as a result of the wrongful conduct alleged herein in an amount to be determined at trial;

d.    an award of punitive damages according to the proof at trial;

e.    an award to Amcom of its costs and expenses incurred in prosecuting this action; and

f.    such other and further relief as the Court deems just.

### Jury Demand

Plaintiff hereby demands trial by jury of all issues.

Dated: New York, New York
       June 2, 2008

DORSEY & WHITNEY LLP

By *[signature]*
Christopher G. Karagheuzoff (CK 1122)
Stephen M. Raab (SR 0742)
250 Park Avenue
New York, NY 10177
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Attorneys for Plaintiff
Amcom Software, Inc.